No. 21-12458/No. 21-13232

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

MUSIC SPECIALIST, INC. and SHERMAN NEALY
*Plaintiffs-Appellants,*

v.

WARNER CHAPPELL MUSIC, INC., ARTIST PUBLISHING
GROUP, LLC, and ATLANTIC RECORDING CORPORATION
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the
Southern District of Florida
No. 1:18-CV-25474-RAR

---

### APPELLANTS' INITIAL BRIEF

Carlton LP Talbot, Esq.                Brady F. Williamson, Esq.
Talbot Legal Consultants               Salzano, Lampert & Wilson, LLP
2719 Hollywood Blvd., Suite 5067       275 Madison Ave., 35th Floor
Hollywood, FL 33020                    New York, NY 10016

Chris Kleppin, Esq.
The Kleppin Law Firm
8751 W. Broward Blvd., Suite 105
Plantation, FL 33324

Counsel for Plaintiffs-Appellants Music Specialist, Inc. and Sherman Nealy

January 25, 2022

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

AI Entertainment Holdings LLC, Parent Company of Defendants-Appellees Warner Chappell Music, Inc. and Atlantic Recording Corporation

Artist Publishing Group, LLC, Defendant-Appellee

Atlantic Recording Corporation, Defendant-Appellee

Baker, Garfield, entitled to % recovery per agreement with Sherman Nealy

Becerra, Jacqueline, United States Magistrate Judge for the Southern District of Florida

Brown Rudnick LLP, Appellant's Counsel

Cowan, Liebowitz & Latman, P.C., Counsel for Defendant Atlantic Recording Corporation

Gaines, Jonathan, Appellee's Counsel

Gray Robinson, P.A., Appellee's Counsel

Herman, Peter, Appellant's Counsel

King, Jonathan, Counsel for Defendant Atlantic Recording

Kleppin, Chris, Appellants' Counsel

Lewis, Chelsea, Appellant's Counsel

Lewis Law, LLC, Appellant's Counsel

Moreno, David, Appellant's Counsel

Music Specialist, Inc., Plaintiff-Appellant

Music Specialist Publishing, d/b/a of Plaintiff-Appellant Music Specialist, Inc.

Nealy, Sherman, Plaintiff-Appellant

Peter Herman, P.A., Appellant's Counsel

Ruiz II, Rodolfo A., United States District Judge for Southern District of Florida

Salzano, Frank, Appellant's Counsel

Salzano, Lampert & Wilson, LLP, Appellant's Counsel

Smith, Byron, entitled to % of recovery per agreement with Sherman Nealy

Stetson, Karen, Appellee's Counsel

Talbot, Carlton, Appellant's Counsel

Talbot Legal Consultants, Appellant's Counsel

The Kleppin Firm, P.A., Appellants' Counsel

Warner Chappell Music, Inc., Defendant-Appellee

Warner Music Group Corporation ("WMG"), Parent Company of Defendant-Appellees Warner Chappell Music, Inc. and Atlantic Recording Corporation

## Corporate Disclosure Statement

Plaintiff-Appellant, Music Specialist, Inc., is not a publicly traded company, has no parent company, and there is no publicly held corporation that owns 10% or more of its stock. Defendants-Appellees, Warner Chappell Music, Inc. and Atlantic Recording Corporation, are not publicly traded companies, but are subsidiaries of Warner Music Group Corporation ("WMG"), which is a publicly traded company

with more than 10% of its stock owned by AI Entertainment Holdings LLC and its affiliates.

January 25, 2022

Respectfully submitted,

_/s/ Carlton Talbot_____
Carlton LP Talbot, Esq.
Talbot Legal Consultants
Fla Bar ID: 0107089
2719 Hollywood Blvd., Suite 5067
Hollywood, FL 33020
954-815-6465
carlton@talbotlegalco.com

*Attorney for Plaintiffs-Appellants Music Specialist, Inc. and Sherman Nealy*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Plaintiffs-Appellants respectfully request oral argument. Oral argument is warranted because one of the issues contained in this appeal is an issue of first impression for this Court, for which a circuit split either (and arguably) presently exists or will more than likely be created prior to a final ruling on the instant appeal (*see* Section I, *infra)*. That issue is whether the Copyright Act (17 U.S.C. § 101 *et seq)* permits the recovery of damages occurring more than three-years prior to the commencement of a copyright infringement suit when the discovery rule governs the accrual of the plaintiff's claims and the plaintiff's claims have been brought within three-years of the date which he learned or should have learned of the defendant's infringement.

On the other issue, which concerns evidence applied to the summary judgment standard, oral argument would significantly aid the Court's decisional process because it would allow the parties to provide this Court with further and necessary explanation of the roles of the different parties in the intricate music industry, and more importantly, with further and necessary explanation of the convoluted factual background pertaining to both the relevant parties and musical works at issue; both of which directly relate to the issue appealed.

## <u>CERTIFICATE OF TYPE SIZE AND STYLE</u>

This Brief has been prepared using 14.0 Times New Roman print.

## <u>TABLE OF CONTENTS</u>

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................ 1

STATEMENT REGARDING ORAL ARGUMENT ............................................ i

CERTIFICATE OF TYPE SIZE AND STYLE ................................................. ii

TABLE OF CONTENTS ................................................................................... ii

TABLE OF AUTHORITIES ............................................................................ iv

STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES 1

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION  1

STATEMENT OF THE ISSUES……………………………………………..2

STATEMENT OF THE CASE ........................................................................... 3

A.  Factual Background ................................................................................. 3
B.  Procedural History .................................................................................. 13
C.  Rulings for Review ................................................................................. 15
D.  Standard of Review ................................................................................. 17

ARGUMENT ................................................................................................... 19

I.  The *Sohm* Holding Contradicts Well-Established Copyright Law and Erroneously Interprets *Petrella*. This Court Should Therefore Adopt the Ninth Circuit's *Polar Bear*-Discovery Rule Exception, Which Provides That § 507(b) Permits Damages Occurring Outside of the Three-Year Window, So Long as the Copyright Owner Did Not Discover- and Reasonably Could Not Have Discovered- the Infringement Before the Commencement of the Three-Year Limitations Period. The *Polar Bear*-Discovery Rule Exception Has Been

Repeatedly Followed By Courts in the Ninth Circuit and Elsewhere Both Pre-and Post-*Sohm* and Will Likely Be Reinforced By the Ninth Circuit Once More in the *Starz* Case Currently Pending Before It. .............................................................. 19

    A.  The Discovery Rule – When the Plaintiff Learns or Should Have Learned of the Defendant's Infringement – Applies to the Accrual of Copyright Claims. 20

    B.  *Petrella* is Consistent With § 507(b) and Did Not Overrule *Polar Bear*. 22

    C.  *Sohm*'s Holding is Inherently Self-Contradictory, Undermines the Discovery Rule, and Has Been Widely Criticized. ......................................... 25

    D.  Wide-Spread Adoption of *Sohm* Would Incentivize Infringement, Place an Unnecessary Burden on Artists, and Harm the Public. ................................... 27

II.    The District Court Usurped the Functions of the Jury, Disregarded Record Evidence, and Improperly Concluded That MSI and Nealy Did Not Present Evidence Sufficient to Defeat Summary Judgment on the Issue of Ownership of the MSP-Registered Songs. Application of a Proper Summary Judgement Standard to the Ample Evidence Present in the Record Mandates That the Issue Be Brought Before the Trier of Fact ....................................................................... 30

    A.  The Deposition Testimony of Nealy Coupled With That of Jonathan Black and Garfield Baker, Standing Alone, Creates a Genuine Issue of Material Fact. 32

    B.  The Facts Stated Within the Copyright Certificates and the Copyright Office's Public Catalog are Documentary Evidence of the Relationship. ........................ 35

    C.  Tony Butler, the Former Vice President of MSI and the Sole Author of the Musical Works Acknowledged in Court Filings That MSI and MSP Were One in the Same Entity. ................................................................................................. 37

CERTIFICATE OF COMPLIANCE .................................................... 43

CERTIFICATE OF SERVICE ............................................................... 44

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alfa Laval Inc. v. Flowtrend, Inc.*, No. H-14-2597, 2016 WL 2625068 (S.D. Tex. May 9, 2016) ................................................................................. 27

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 30

*Beatie v. City of New York*, 123 F.3d 707 (2d Cir. 1997) ....................................... 31

*Calhoun v. Lillenas Publ'g*, 298 F.3d 1228 (11th Cir. 2002) ................................. 20

*Casey Enterprises v. Am. Hardware Mutual Insurance Co.,* 655 F.2d 598, (5th Cir.1981) ......................................................................... 17

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.,* 402 F.3d 1092 (11th Cir.2005) ......................................................................... 31

*D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121 (D.N.H. 2021) ......................................................................... 27

*Eastman Kodak Co. v. Image Technical Servs, Inc.*, 504 U.S. 451 (1992) ............ 34

*Environmental Defense Fund v. Marsh*, 651 F.2d 983 (5th Cir.1981) ................... 17

*Habersham Plantation Corp. v. Molyneux, No.* 10-61526-CIV-DIMITROULEAS, 2011 U.S. Dist. LEXIS 117511 (S.D. Fla. Aug. 19, 2011) ................................. 14

*Harris v. H & W Contracting Co.*, 102 F.3d 516 (11th Cir. 1996) ........................ 17

*Krist v. Scholastic, Inc.*, 253 F. Supp. 3d 804 (E.D. Pa. 2017) .............................. 27

*Maxi-Taxi Of Fla., Inc. v. Lee Cty. Port Auth.*, 301 F. App'x 881 (11th Cir. 2008) ......................................................................... 30

*Menzel v. Scholastic*, Inc., No. 17-CV-05499-EMC, 2019 WL 6896145 (N.D. Cal. Dec. 18, 2019) ......................................................................... 24

*Mitchell v. Capitol Recs., LLC*, 287 F. Supp. 3d 673 (W.D. Ky. 2017) ................. 27

*Morrison v. Washington County, Alabama,* 700 F.2d 678 (11th Cir. 1983) ........... 17

iv

*Petrella vs. Metro-Goldwyn-Mayer, Inc.*, 572 US 662 (2014)....................... passim

*Polar Bear Productions, Inc. v. Timex Corp*., 384 F.3d 700 (9th Cir. 2004)... 16, 22, 24, 29

*Richardson v. Kharbouch*, No. 19-C-02321, 2020 WL 1445629 (N.D. Ill. Mar. 25, 2020) ............................................................................................................ 27

*Saregama India Ltd. v. Mosley,* 635 F.3d 1284 (11th Cir. 2011)........................... 31

*Sohm vs. Scholastic*, 959 F.3d 39 (2d Cir. 2020) ........................................... passim

*Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F.Supp.3d 878 (C.D. Cal. Jan. 5, 2021), *motion to certify appeal granted*, No. CV 20-4085-DMG (KSX), 2021 WL 945237 (C.D. Cal. Feb. 22, 2021).................... 24, 26, 29

*Stewart v. Booker T. Washington Ins*., 232 F.3d 844 (11th Cir. 2000) .................. 31

*Stone v. Williams*, 970 F.2d 1043 (C.A.2 1992)...................................................... 21

*Strickland v. Water Works and Sewer Bd*., 239 F.3d 1199 (11th Cir. 2001).......... 31

*Thrasher v. State Farm Fire & Cas. Co*., 734 F.2d 637 (11th Cir. 1984).............. 17

*Tippens v. Celotex Corp.,* 805 F.2d 949 (11th Cir. 1986) ...................................... 18

*Topline Sols., Inc. v. Sandler Sys., Inc.*, No. ELH-09-3102, 2017 WL 1862445 (D. Md. May 8, 2017) ............................................................................................ 27

*Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057 (11th Cir.1994). ............................ 18

*Urbont v. Sony Music Ent*., 831 F.3d 80 (2d Cir. 2016)......................................... 30

*Webster v. Dean Guitars*, 955 F.3d 1270 (11th Cir. 2020) .................................... 20

*William A. Graham Co. v. Haughey*, 568 F.3d 425 (3rd Cir. 2009) ...................... 21

**Other Authorities**

Brief for Professor Tyler T. Ochoa as Amici Curiae Supporting Appellee, Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC (No. 21-55379)(9th Cir.)................................................................................................... 26

Brief for The Authors Guild, Inc., the American Society of Media Photographers, Inc., The Dramatists Guild of America, the Graphic Artists Guild, the Romance Writers of America, the Songwriters Guild of America, Inc., and the Textbook & Academic Authors Association as Amici Curiae Supporting Appellee, Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC (No. 21-55379)(9th Cir.) .......................................................................................... 28

**Rules**

28 U.S.C. § 1338(a) ........................................................................................... 1

17 U.S.C. § 101 *et seq.* ................................................................................... i, 1

17 U.S.C. § 410(c) ....................................................................................... 6, 35

17 U.S.C. § 504 ......................................................................................... 19, 22

17 U.S.C. § 504(c)(1) ...................................................................................... 20

17 U.S.C. §§ 201(a) .......................................................................................... 5

17 U.S.C. 504(a)(1)-(2) .................................................................................... 19

17 U.S.C. § 204(a) ............................................................................................ 5

28 U.S.C. § 1292(b) .......................................................................................... 1

28 U.S.C. §§ 1331 ............................................................................................. 1

FRCP 56(c) ..................................................................................................... 17

FRCP 54(b) ....................................................................................................... 1

FRCP 56(a) ..................................................................................................... 30

U.S. Const. art. I § 8 cl. 8 .............................................................................. 28

## STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

Plaintiffs-Appellants do not desire to adopt the Brief of any other party.

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Plaintiffs-Appellants Music Specialist, Inc. ("MSI") and Sherman Nealy ("Nealy") brought the underlying lawsuit alleging copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101 *et seq*. The district court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). (Doc. 1; Doc. 74[1]). On June 4, 2021, the district court affirmed and adopted the Magistrate Judge's report and recommendation and granted Defendants-Appellees Atlantic Recording Corporation ("Atlantic"), Warner Chappell Music, Inc. ("Warner"), and Artist Publishing Group, LLC's ("Artist") motion for summary judgment on the two issues presented herein. (Doc. 224; Doc. 256). On June 21, 2021, the district court certified the two issues for appeal – one issue (*see* Statement of the Issues, Issue I) being certified pursuant to 28 U.S.C. § 1292(b) as a controlling question of law with substantial ground for a difference of opinion, and one issue *(see* Statement of the Issues, Issue II) being certified pursuant to Fed. R. Civ. P. 54(b) as a final judgment from which the district court correctly concluded there was no just reason to delay an immediate appeal.

---

[1] The operative complaint is Plaintiffs' Third Amended Complaint filed on December 5, 2019.

(Doc. 262). On July 1, 2021, MSI and Nealy filed a Petition for Permission to Appeal under 1292(b), which petition was granted (and the appeal noticed) on September 22, 2021 (No. 21-13232). (Doc. 269). MSI and Nealy also timely filed a notice of appeal pertaining to the FRCP 54(b) issue on July 21, 2021 (No. 21-12458). (Doc. 263). On September 23, 2021, MSI and Nealy filed a motion to consolidate the two appeals, which motion was granted on December 16, 2021. This Court has jurisdiction over the district court's rulings pursuant to 28 U.S.C. § 1292(b) and FRCP 54(b)[2].

## STATEMENT OF THE ISSUES

I.      Whether the district court erred in relying on *Sohm vs. Scholastic*, 959 F.3d 39 (2d Cir. 2020) in concluding that, pursuant to the Supreme Court's holding in *Petrella vs. Metro-Goldwyn-Mayer, Inc.*, 572 US 662 (2014), the Copyright Act has a strict damages bar preventing the recovery of damages from infringements committed more than three years from filing suit, regardless of the discovery rule dictating when the claims accrued.

---

[2] On October 1, 2021, this Court proposed a jurisdictional question to the parties as to the FRCP 54(b) issue – No. 21-12458. Pursuant to this Court's December 16, 2021 Order, that jurisdictional question is carried with the case. MSI and Nealy's October 15, 2021 response to the Court's jurisdictional question is therefore incorporated herein.

II.    Whether the district court entering summary judgment against MSI and Nealy on the issue of ownership of the MSP-Registered Songs (*see* Factual Background), reasoning that MSI and Nealy had produced insufficient evidence to create a genuine dispute regarding Music Specialist Publishing ("MSP") being an assumed name of, and having no legal existence apart from, MSI, constitutes reversible error, when record evidence existed and was brought to the attention of the district court that demonstrated precisely that.

## STATEMENT OF THE CASE

### A. Factual Background

Sherman Nealy ("Nealy") founded Music Specialist, Inc. ("MSI") as an independent record company in 1983. (Doc. 224, at p. 17). Nealy hired a producer and recording artist named Tony Butler ("Butler")(professionally known as Pretty Tony) to assist in the creation of music to be released by MSI. *Id*. at p. 17-18. In addition, Butler became the Vice President of MSI. *Id.* So that MSI could also publish their musical compositions – *i.e.,* make available to the public and to others to use – and administer the publishing rights thereto, Nealy later created a publishing arm, which was called MSP.[3] (Doc. 74 at ¶ 22; Doc. 184 at pp. 6, 18). Although at

---

[3] For clarity, a record label (*e.g*., MSI and Atlantic) typically releases and controls copyrights to sound recordings, also known as masters, which are "the fixation of a series of musical, spoken, or other sounds" (*i.e*., what you hear on the radio); whereas a publisher (*e.g*., MSP, Warner, and Artist) typically licenses and controls copyrights

times referred to as an affiliate of MSI, MSP was – MSI and Nealy maintain – actually just an unregistered d/b/a or assumed name of MSI which performed a separate and singular function, but was operated by the same individuals and located at the same address as MSI. *Id.*; *see* Section II, *infra*. It is indisputable that MSP was never incorporated or organized, and no argument has ever been made or evidence presented to show that MSP was either a sole proprietorship or partnership, which as MSI and Nealy maintain, it was not.

Between 1983 and 1986, Butler and the other recording artists engaged by MSI/MSP created, *i.e.*, wrote and produced, a number of different musical compositions and released a number of different sound recordings. (Doc. 224, at p. 17-18). Currently relevant to this appeal are three musical compositions – (1) "Jam the Box", (2) "I Know You Love Me", and (3) "Computer Language" (the "MSP

---

in musical compositions, which are the actual "music, including any accompanying words" (*e.g.*, sheet music). *Copyright Registration of Musical Compositions and Sound Recordings,*
https://www.copyright.gov/register/pa-sr.html#:~:text=A%20Sound%20Recording%20results%20from%20the%20fixatio n%20of,fixes%20them%20in%20the%20final%20recording%2C%20or%20both.
The copyrights to sound recordings and musical compositions are separate and distinct rights which can be registered, transferred, and protected. *Id.*

Registered Songs"). *Id.* at pp. 26-27; (Doc. 256, at p. 3-7).[45] As a basis for the underlying lawsuit, MSI and Nealy contend, and no direct evidence refuting such contention has been presented, that the copyrights to both the MSI-Registered Songs, *see* note 4, and the MSP-Registered Songs (collectively, the "Musical Works"), were transferred to MSI and MSP by Butler – the sole author of each – by way of written transfer agreements, and as works for hire[6], during his time working for MSI. (Doc. 184, at p. 14-22; Doc. 256, at p. 10-11).

---

[4] Also relevant to the underlying lawsuit are the musical compositions "Lookout Weekend" and "The Party Has Begun" (the "MSI-Registered Songs"). MSI and Nealy defeated summary judgment on the issue of ownership as to the MSI-Registered Songs based on their production of certificates of copyright registration naming MSI as the copyright claimant and additional evidence supporting their contention that Butler's copyrights – which initially vest with the author of a work and remain with that author unless he has transferred the copyright to another party in a signed writing, *see* 17 U.S.C. §§ 201(a) and 204(a) – were, in fact, transferred to them by Butler as required by copyright law. (Doc. 224, at pp. 23-34; Doc. 256, at pp. 10-11).

[5] The sounds recordings "When I Hear Music," "Fix It In the Mix," and "Freestyle Express," – which were at one point a part of the underlying lawsuit –were removed by stipulation of the parties because insufficient evidence existed that Atlantic, Warner, and/or Artist exploited those sound recordings and earned monies therefrom. (Doc. 231, at ¶ 2; Doc. 256, at p. 10).

[6] A "work made for hire" is a legal term that means "the employer – not the employee (composer) – is considered the legal author [and therefore] the employee is not entitled to the work's publishing rights despite the fact that they were the composer." *What Does it Mean When a Song is a "Work For Hire"?*, https://help.songtrust.com/knowledge/what-does-it-mean-when-a-song-is-a-work-for-hire.

And, despite no longer being able to produce the actual written transfer agreements from Butler, which were entered into over thirty-five years ago, MSI and Nealy have produced certificates of copyright registration from the United States Copyright Office ("Copyright Office") for each of the Musical Works. (Doc. 224, at p. 23-27; Doc. 176-10, at pp. 1-15). Those certificates, which pursuant to 17 U.S.C. § 410(c) constitute *prima facie* evidence[7] of the validity of the copyright and the facts provided on the face of the certificate, each indicate (as MSI and Nealy have asserted) that Butler's rights in the Musical Works were transferred to MSI and MSP by way of written transfer agreements and/or as works for hire. (Doc. 175, at p. 5; Doc. 176-10, at pp. 1-15); *see* Section II, *infra*. As discussed in depth below, in addition to the facts provided on the face of the certificates, in subsequent litigations concerning the Musical Works, Butler himself has admitted to having transferred all of his copyrights to MSI and MSP.

Also important, as it relates to the copyright certificates and the instant appeal of the district court's ruling that MSI and Nealy do not have standing to assert ownership of the MSP-Registered Songs are the following facts in the record: (1) as provided on the certificates for "Jam the Box" and "I Know You Love Me" (two of

---

[7] To constitute *prima facie* evidence under § 410(c) the certificates must also be "made before or within five-years after first publication of the work." All of MSI and Nealy's certificates satisfy this requirement. (Doc. 175, at p. 5; Doc. 176-10, at pp. 1-15).

the MSP-Registered Songs) correspondence pertaining to the musical compositions was directed to MSI corporate Secretary Tara Washington ("Washington") at "Music Specialists, Inc., 67 N.W. 71st Street, Miami, FL 33150." (Doc. 176-10, at pp. 6, 12; Doc. 248, at p. 6-7) Washington signed the registration "for" and  as "the authorized agent of Music Specialist Publishing," *id.*; (2) former MSI legal consultant Jonathan Black testified that when he was brought on to help setup MSI's publishing catalog at the end of 1985, he began using MSP as the copyright claimant on the copyright registrations in order to "separate the record operations from the publishing operations," (Doc. 248, at p.8); and (3) Black also testified that he personally prepared the songwriter agreement whereby Butler transferred his copyrights in "Jam the Box" and "I Know You Love Me" to MSP – and personally prepared  the corresponding copyright registration for those musical compositions  – all during his time working with MSI. (Doc. 248, at p. 3-4). In addition, Black, as well as Nealy himself, and former MSI recording artist Garfield Baker each testified in depositions in the underlying lawsuit that MSP was a d/b/a, and the publishing arm, of MSI. *Id.* at p. 6-9.

In 1988, Nealy was sentenced to twenty-years in prison. (Doc. 165, at p. 2-3; Doc. 184, at p. 7-8). Aware that Nealy was behind bars, that MSI had been administratively dissolved for failure to pay corporate fees, and that, as author of the musical compositions he could hold himself out to be the owner of MSI and MSP's

copyrights – notwithstanding his previous transfer of those rights to MSI and MSP – Butler (who had just completed a short prison stay himself) began unlawfully transferring and licensing MSI and MSP's copyrights in the Musical Works to third parties without MSI and Nealy's knowledge or consent. (Doc. 165, at p.2-3). Butler first transferred and licensed the works to companies named Pandisc Music Corp. ("Pandisc") and Whooping Crane Music, Inc. ("Whooping Crane"), who filed suit against Butler in 2006 claiming to own the copyrights which Butler was subsequently attempting to transfer and license elsewhere (the "2006 Case"). (Doc. 167-10). Responding to Pandisc and Whooping Crane's complaint in the 2006 Case, Butler (filing *pro se*), admitted that "100% of the copyrights in the compositions" at issue, which included the MSI-Registered Songs and "I Know You Love Me" (an MSP-Registered Song) had been transferred by him to, and were owned and controlled by, Music Specialist, Inc." (Doc. 167-10, at ¶¶ 13, 16, 18; Doc. 185-12, at ¶ 16, 18). He further admitted that the rights in the musical compositions were never transferred by MSI. (Doc. 185-12, at ¶18).

With the 2006 Case still pending, Butler licensed "Jam the Box" to Atlantic sometime prior to March of 2008, and undisputedly Atlantic recording artist Flo-Rida used the musical composition in his hit song "In the Ayer." (Doc. 224, at p. 3). Shortly thereafter, in July of 2008, Butler entered into an exclusive worldwide publishing administration agreement, pursuant to which he transferred and licensed

the copyrights in the Musical Works to Warner and Artist through a company named 321 Music, LLC ("321"), which was created in 2007 and wholly owned by Butler. *Id.* In 2009 Pandisc and Whooping Crane filed suit against 321, Atlantic, Warner, and Artist for copyright infringement (the "2009 Case"). (Doc. 185-9). In its counterclaim in the 2009 Case, 321 (*i.e.*, Butler) claimed to have "obtained [the copyrights in all of the Musical Works] from Tony Butler and *Music Specialist Publishing (Music Specialist)*." *Id.* at p.9, ¶ 8 (emphasis added). Importantly, 321 listed each of the Musical Works, including the year of registration and the copyright number (all of which correspond the MSI and Nealy's copyright certificates), and admitted that MSP "owned the music since its creation." *Id.* at ¶¶ 8, 10, 13, 23, 24, 32; (Doc. 168-10, at pp. 1-15). As Exhibit B to the counterclaim, 321 attached the Copyright Office's full catalog of musical compositions and sound recordings registered by MSI and MSP, which showed that the MSI-Registered Songs were registered in the name of MSI and the MSP-Registered Songs were registered in the name of MSP. (Doc. 185-9, at pp. 22-24).

To clarify, Butler admitted in the 2006 Case that 100% of his copyrights in the MSI-Registered Songs and "I Know You Love Me" (an MSP-Registered Song) had been transferred to and were owned by MSI. Then in the 2009 Case, 321 (*i.e.*, Butler) admitted that Butler's copyrights in the Musical Works (most importantly, as it relates to this appeal, the MSI-Registered Songs) were owned by MSP "since

9

[their] creation." By stating that the copyrights in "I Know You Love Me" (an MSP-Registered Song) were transferred to and owned by MSI and then that the MSI-Registered Songs (as well as "I Know You Love Me") had been owned by MSP since their creation, Butler – the former Vice President of MSI and the sole author of the Musical Works, and thus, the only person legally entitled to originally transfer the copyrights – confirmed that MSI and MSP were one in the same entity, and that he had transferred his rights in the Musical Works to that entity as provided on the copyright certificates.

Butler's assertion that MSI/MSP transferred copyrights back to him, or to his company 321, however, is patently false. Atlantic, Warner, and Artist – who were transferred and licensed the rights in the musical works from Butler and 321, and were co-defendants with 321 in the 2009 Case – have never produced and have never even represented to have seen such agreements. Despite this undeniable fact, Atlantic, Warner, and Artist joined in Butler's false allegation by asserting, as an affirmative defense, that Pandisc and Whooping Crane's claim of ownership over the copyrights was "barred by virtue of a successive agreement covering the same musical works." (Doc. 185-13, at pp. 13, 29). The only conceivable "successive [transfer] agreements" they could be referring to would be (1) an agreement between MSI/MSP and Butler and then a subsequent agreement between Butler and 321 or (2) an agreement between MSI/MSP and 321 and then subsequent agreements from

321 to them. However, it has not and cannot be disputed that MSI/MSP never once transferred the copyrights in the Musical Works to any third party, including Butler and 321. (Doc. 224, at p. 21).Thus, the "successive agreements" were a complete and utter fabrication.[89]

Even more, by agreeing with Butler and 321's claims that MSP owned the copyrights in the Musical Works (specifically, the MSI-Registered Songs) from their creation – as they had to have in order to assert that the first of the "successive agreements" occurred – Atlantic, Warner, and Artist were, at least implicitly, acknowledging that MSI and MSP were one in the same entity. This is so because if

---

[8] It is hard to imagine that Atlantic, Warner, and Artist – three of the largest music entities on the planet – would not have at least performed a review of the Copyright Office's website or records to verify 321 and Butler's claims of ownership. Even a cursory review, would have quickly alerted them to the fact that the copyrights Butler was purporting to own had been registered by MSI and MSP some twenty-five years prior, and it would seem, prompt them to request proof that MSI and MSP had transferred the copyrights back to him or to 321. Coupled with the fact that they have never produced the agreement(s) or even represented to have seen them, it logically follows that they were fully aware that the claim – that MSP (as well as MSI, as would be legally required) transferred the copyrights back to Butler or 321 – was false at the time they made it.

[9] Of note, at the relevant time, well-known music producer and executive Mike Caren was the senior vice president of artists and repertoire at Atlantic, where he was in charge of finding artists, securing licenses for musical compositions, and producing music – as he did with Flo-Rida, "Jam the Box," and "In the Ayer." (Doc. 185, at p. 17, ¶¶ 89-90). Caren was also the sole owner and controlling officer of Artist, which was 50% owned by Warner. *Id.*. Accordingly, any relevant fact known by one of Atlantic, Warner, or Artist would be known by, or at the very least should be reasonably imputed to, the other entities.

the entities were not one in the same, then it would only have been MSI who could have transferred the rights to the MSI-Registered Songs and only MSP who could have transferred the rights to the MSP songs; and any argument whatsoever that Atlantic, Warner, and Artist did not perform at least minimal due diligence, *i.e.*, checking the Copyright Office website or records, before entering into their agreements with Butler and 321 (and therefore did not know that the musical compositions "Lookout Weekend" and "The Party Has Begun" had been registered in the name of MSI) is entirely unbelievable. Like Butler, however, in the underlying lawsuit, Atlantic, Warner, and Artist simply cherry-picked facts and cleverly altered their narrative to prevent MSI and Nealy from recovering monies rightfully owed to them.[10]

Nealy was released from prison in March of 2008, but served a second prison term from early 2012 to approximately September of 2015. (Doc. 184, at pp. 11-12). Nealy was removed from the music business and his associates within it throughout his two incarcerations and was never notified (through subpoena or otherwise) of the 2006 Case, the 2009 Case, or any of the other litigations or agreements pertaining to

---

[10] Had the parties to the 2009 Case not settled the case by entering into a mediated settlement agreement and subsequent amendment thereto – both of which were subsequently adjudicated fraud *ab initio* – it is likely that the truth (*i.e.*, that MSI and MSP were the true owners of the copyrights in the Musical Works) would have eventually been revealed, and the underlying lawsuit would have never been necessary. (Doc. 184, at p. 11).

the Musical Works. (Doc. 185, at p. 16, ¶ 88). Not until January of 2016, did Nealy first learn that Butler transferred and licensed the copyrights in the Musical Works to Atlantic, Warner, and Artist, and that those entities had been using and exploiting the Musical Works dating back to 2008. *Id.*

## B. Procedural History

The underlying lawsuit was commenced on December 28, 2018 – within three years of Nealy learning of Atlantic, Warner, and Artist's infringements in January of 2016. (Doc. 1). The parties filed cross motions for summary judgment on October 26, 2020, and responses and replies thereto on November 16, 2020 and December 4, 2020, respectively. (Docs. 165-167; Docs. 175-176; Docs. 182-185; Docs. 190-192).

On March 8, 2021, the Magistrate Judge issued a report and recommendation, in which the Magistrate Judge recommended and concluded as follows: (1) MSI and Nealy could not bring suit on behalf of MSP for the MSP-Registered Songs because there was "no evidence in the record to support a finding that [MSI] ha[s] an ownership interest" in those songs and "nothing in the record that supports the allegation that MSP was created to administer the publishing rights to compositions owned by MSI"; (2) that Atlantic, Warner, and Artist had rebutted the presumption of ownership afforded the certificates for the MSI-Registered Songs; but (3) that considering the other evidence in the record that Butler had transferred his copyrights to MSI, including the testimony of Nealy and the evidence of the transfer

13

on the certificates for the MSI-Registered Songs themselves, the issue of ownership as to the MSI-Registered Songs was not subject to summary judgment. (Doc. 224, at pp. 23-34). The Magistrate Judge also recommended and concluded that (1) the underling lawsuit sounds in "ownership, as opposed to infringement," *see* note 11, *infra*; (2) an "ownership claim … accrues once, at the time the plaintiff learns or should have learned that the defendant was violating his ownership rights," (Doc. 224, at pp. 35-36); and (3) MSI and Nealy's claims should not be barred at the summary judgment stage by the statute of limitations because based on Nealy's testimony and the other evidence in the record, "reasonable minds could differ on whether Nealy" brought the underlying lawsuit within three-years of "discover[ing] that [the] Defendants were infringing on" MSI and Nealy's copyrights. *Id.* at pp. 34-41. Inexplicably, as MSI and Nealy explained in their objections to the report and recommendation, the Magistrate Judge opined that the "discovery rule [wa]s not at issue" despite citing to *Habersham Plantation Corp. v. Molyneux, No*. 10-61526-CIV-DIMITROULEAS, 2011 U.S. Dist. LEXIS 117511 (S.D. Fla. Aug. 19, 2011) – in which the Southern District of Florida adopted the discovery rule and approvingly cited to *Polar Bear* in denying the defendants' summary judgment motion because the defendants could not "demonstrate, by undisputed facts, that Plaintiff 'knew or reasonably should have known' of those acts of infringement occurring more than three years before the lawsuit was filed," *id.* at *14–16 – and

concluding that MSI and Nealy's claims accrued at the time he learned the defendant were violating his ownership rights, *i.e.*, committing infringement. (Doc. 224, at p. 35-37; Doc. 248, at pp. 10-15). The Magistrate Judge concluded that MSI and Nealy "conflate[d] the issue of when the action accrues, the discovery rule, and how far back they can seek damages," however, as explained in the depth in Section I below, separating the two – as *Sohm* did – is inherently self-contradictory and makes no practical sense. *Id.* at note 6.

The district court affirmed and adopted the report and recommendation on June 4, 2021. (Doc. 224; Doc. 256). Pursuant to the summary judgment order, Atlantic – whose sole alleged infringement was of "Jam the Box" (an MSP-Registered Song) – was dismissed from the case, and thus, the district court also entered final judgment in favor of Atlantic on June 4th. (Doc. 257). On June 21, 2021, upon joint request of the parties by way of an *ore tenus* motion, the district court certified the two issues contained herein for immediate appeal and administratively closed the case pending the result. (Doc. 260; Doc. 262).

## C. Rulings for Review

MSI and Nealy seek review of two rulings contained in the district court's summary judgment order.

First, the district court's reliance on the Second Circuit's interpretation of *Petrella* in *Sohm*. The district court explained that (1) *Petrella* "explicitly delimited

damages to the three years prior to the filing of a copyright infringement action" without exception, and that (2) *Sohm* "persuasively reasoned" that *Petrella's* holding – "that laches was inapplicable to actions under the Copyright Act" – was "partially based 'on the conclusion that the statute itself takes account of the delay by limiting damages to the three-years prior to when suit is filed.'" (Doc. 256, at pp. 7-8). Because "[t]he three year limitation on damages was … an integral part of the result in *Petrella*," the district court explained, it constituted "binding precedent." *Id.* Implicitly, the district court also agreed with *Sohm* that *Petrella* – which originated in the Ninth Circuit itself – had overturned the Ninth Circuit's holding in *Polar Bear Productions, Inc. v. Timex Corp*., 384 F.3d 700, 705-06 (9th Cir. 2004) that 17 U.S.C. "§ 507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discover-and reasonably could not have discovered-the infringement before the commencement of the three-year limitation period." *Id.*

Second, the district court's holding that MSI and Nealy did not present sufficient evidence to create a genuine issue of material fact regarding MSI's ownership of the MSP-Registered Songs. The district court reasoned that the deposition testimony of Nealy, Jonathan Black, and Garfield Baker on the issue was "speculative … uncorroborated and contradictory," and that MSI and Nealy presented no corroborating documentary evidence of the d/b/a relationship. Ultimately, the district court explained that MSI and Nealy needed to "establish[]

that MSP had no legal existence apart from MSI and was no more than an assumed

name … [to] receive the benefit of the presumption of legal ownership based on the

copyright registrations for the MSP-Registered Songs," and defeat summary

judgment. *Id*. at pp. 3-7.

## D. Standard of Review

This Court is required to make an "independent[] review" of an order granting

summary judgment; examining the decision through application of "the same legal

standards" as those of the district court. *Thrasher v. State Farm Fire & Cas. Co*.,

734 F.2d 637, 638 (11th Cir. 1984) (citing *Morrison v. Washington County,*

*Alabama,* 700 F.2d 678 (11th Cir. 1983) and *Environmental Defense Fund v. Marsh*,

651 F.2d 983, 991 (5th Cir.1981). Thus, this Court is to "review the evidence and all

factual inferences therefrom in a light most favorable to" MSI and Nealy; resolve all

"reasonable doubts about the facts … in favor of" MSI and Nealy; and ultimately

determine whether "any genuine issue of material fact exists." *Id*. at 638-39 (citing

FRCP 56(c) and *Casey Enterprises v. Am. Hardware Mutual Insurance Co.,* 655

F.2d 598, 602 (5th Cir.1981)(internal citations omitted).

The plaintiff is not required to prove his or her case in order to withstand a

motion for summary judgment. *Harris v. H & W Contracting Co.*, 102 F.3d 516, 521

(11th Cir. 1996). Moreover, as to motions for summary judgment, this Court has

stated that "[s]ummary judgment is a lethal weapon, and courts must be mindful of

its aims and targets and beware of overkill in its use." *Tippens v. Celotex Corp., 805 F.2d 949, 952-53* (11th Cir. 1986). Accordingly, this Court reviews *de novo* the district court's grant of a motion for summary judgment. *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060 (11th Cir.1994).

## SUMMARY OF THE ARGUMENTS

*Issue 1*: The district court incorrectly relied on the Second Circuit's inherently self-contradictory holding in *Sohm*, which also contradicts the plain language of the Copyright Act, erroneously interprets *Petrella*, and has been widely-criticized by district courts and experts throughout the country for its impact on the discovery rule, as well as its impact on artists and their rights. This Court, which has not yet had occasion to address this issue, should refuse to adopt the *Sohm* holding, and instead adopt the Ninth Circuit's *Polar Bear*-Discovery Rule Exception, which provides for the recovery of damages more than three years from the date a civil action under the Copyright Act is commenced when the discovery rule applies.

*Issue 2*: The district court usurped functions appropriately carried out by the jury, including making credibility determinations and weighing evidence, disregarded record evidence, and did not make factual inferences in favor of MSI and Nealy. If the district court had properly applied a summary judgment standard to the evidence presented by MSI and Nealy, and otherwise contained in the district court record, they would have correctly concluded that such evidence is more than

18

sufficient to permit a reasonable jury to find in favor of MSI and Nealy on the issue of MSI's ownership of the MSP-Registered Songs. As such, the district court's holding was erroneous.

## **ARGUMENT**

**I. The *Sohm* Holding Contradicts Well-Established Copyright Law and Erroneously Interprets *Petrella*. This Court Should Therefore Adopt the Ninth Circuit's *Polar Bear*-Discovery Rule Exception, Which Provides That § 507(b) Permits Damages Occurring Outside of the Three-Year Window, So Long as the Copyright Owner Did Not Discover- and Reasonably Could Not Have Discovered- the Infringement Before the Commencement of the Three-Year Limitations Period. The *Polar Bear*-Discovery Rule Exception Has Been Repeatedly Followed By Courts in the Ninth Circuit and Elsewhere Both Pre-and Post-*Sohm* and Will Likely Be Reinforced By the Ninth Circuit Once More in the *Starz* Case Currently Pending Before It.**

Title 17 U.S.C. § 507(b) – limitations on actions under the Copyright Act – states: "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." § 507(b). And, 17 U.S.C. § 504 – remedies for infringement – states: "Except as otherwise provided by this title, an infringer of a copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer ... or (2) statutory damages." 17 U.S.C. 504(a)(1)-(2). Read in conjunction, provided a claim for infringement under the Copyright Act is timely commenced, *i.e.*, commenced within three years after the claim *accrued*, a successful plaintiff is entitled to any damages associated therewith. *See* §§ 507(b); 504(a)(1)(2)(emphasis added). In fact, §

504(c)(1) provides insight into the legislature's intent by expressly providing that a plaintiff is entitled to "statutory damages for *all* infringements." 17 U.S.C. § 504(c)(1)(emphasis added). Apart from explanations of how actual damages (and profits) and statutory damages are proven and computed, no further limitations on damages (specifically, retrospective damages) can be found within the Copyright Act.

### A. The Discovery Rule – When the Plaintiff Learns or Should Have Learned of the Defendant's Infringement – Applies to the Accrual of Copyright Claims.

This Court has held that copyright claims accrue "when the plaintiff learns, or should as a reasonable person have learned, that the defendant was violating his ownership rights," *i.e.*, committing infringement. *Webster v. Dean Guitars*, 955 F.3d 1270, 1276 (11th Cir. 2020)[11] (citing *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1236 (11th Cir. 2002)(Birch, J., concurring)(a copyright infringement claim's "limitations period may be triggered when a plaintiff knows or, in the exercise of

---

[11] Although *Webster* differentiated a copyright "ownership" claim, *i.e.,* a claim where the "gravamen" or "only disputed issue" remaining was ownership from an "ordinary copyright infringement claim," where "there [remains] a dispute over whether the defendant actually used or created something 'substantially similar' to plaintiff's work," MSI and Nealy contend (as *Webster* seemingly implied by citing to *Calhoun*) that this is a distinction without a difference. *Webster*, 955 F.3d 1270 at 1277. Nevertheless, the issue is of no matter here, as Atlantic, Warner, and Artist admit to having used and exploited the Musical Works, and thus, the only dispute remaining – aside from an assessment of damages – is whether MSI and Nealy own the copyrights in the Musical Works.

reasonable diligence, should have known about an infringement"). This accrual concept, despite not expressly referred to as such by this Court in *Webster*, is known as the discovery rule, and virtually every other federal circuit court that has addressed the issue is in agreement that the discovery rule applies to the accrual of copyright claims. *See William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3rd Cir. 2009) ("Although we have not previously addressed this issue, eight of our sister courts of appeals have applied the discovery rule to civil actions under the Copyright Act."); *Petrella,* 572 U.S. 663 at note 4 ("Although we have not passed on the question, nine Courts of Appeals have adopted, as an alternative to the incident of injury rule,[12] a 'discovery rule,' which starts the limitations period when the 'plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim."); *Sohm*, 959 F.3d at 50 ("the discovery rule applies for statute of limitations purposes in determining when a copyright infringement claim accrues").

Thus, it would follow that, pursuant to § 507(b), a plaintiff who commences a claim under the Copyright Act within three years of the date upon which his claims accrued – *i.e*., the date which he learned or should have learned that the defendant

---

[12] The incident of injury rule, also known as the separate accrual rule, is the concept that "the statute of limitations runs separately for each infringement," meaning a separate infringement claim accrues, and "a new limitations period" begins to run, each time an infringer "commits a new wrong." *Petrella*, 572 U.S. at 671 (quoting *Stone v. Williams*, 970 F.2d 1043, 1049 (C.A.2 1992)).

was violating his ownership rights, or infringing his copyrights – would be entitled to any and all damages associated with such infringement, as outlined in § 504(a). And, this is exactly the result the Ninth Circuit came to in *Polar Bear. Polar Bear*, 384 F.3d at 705-06 ("§ 507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discover-and reasonably could not have discovered-the infringement before the commencement of the three-year limitation period.").

### B. *Petrella* is Consistent With § 507(b) and Did Not Overrule *Polar Bear*.

In *Petrella*, the Supreme Court addressed whether a laches defense was available to preclude a copyright owner from bringing a claim that would have otherwise been timely under § 507(b). *Petrella*, 572 U.S. at 671. *Petrella* centered around defendant, MGM's, use and distribution of the film *Raging Bull*, which was based in part on a screenplay co-authored and copyrighted by the plaintiff's father, Frank Petrella, in 1963. *Id.* Frank Petrella and his co-author (Jake LaMotta, whose life was the subject of the film) had "assigned their rights and the renewal right" in 1976. *Id.* at 663. Having acquired the rights, in 1980 MGM released the film. *Id.* In 1991, Frank Petrella's daughter, Paula (the plaintiff), renewed the 1963 copyright and became "its sole owner." *Id.* Due to the film's notoriety and her father's prior copyright assignment, there was no question that the plaintiff was aware of her infringement claim as of the 1991 renewal, yet she did not contact MGM until 1998

to assert her rights and did file suit against MGM until 2009. *Id.* MGM "invoke[ed] the equitable doctrine of laches," arguing that the plaintiff's "18-year delay in filing suit … was unreasonable and prejudicial," and the suit should therefore be dismissed. *Id.* at 664. The Ninth Circuit agreed and dismissed the case. *Id.*

On appeal, the Supreme Court overturned the dismissal, holding that "[l]aches cannot be invoked" to "bar … a claim for damages brought within § 507(b)'s three-year window." *Id.* The Supreme Court reasoned that a "copyright claim arises or 'accrues' when an infringing act occurs," *i.e.*, the separate accrual rule. *Id.* at 671. However, the Court explained, a copyright owner is not required to "challenge each and every actionable infringement," and § 507(b)'s Congressionally-created limitations period intentionally allows a "copyright owner to defer suit until she can estimate whether litigation is worth the candle." *Id.* at 683. If a copyright holder is aware of an infringement and decides to wait though, "she will miss out on damages for periods prior to the three-year look-back" from filing suit. *Id.* In short, "[b]y permitting a successful plaintiff to gain retrospective relief only three years back from the time of suit, the copyright statute of limitations itself [§ 507(b)] takes account of [the] delay." *Id* at 664.

Clearly, and inconsistent with the holdings in *Sohm* and the district court in the underlying lawsuit, the "delay" refers to the delay in filing suit by a plaintiff who is fully aware of a defendant's infringement. Unquestionably, *Petrella* was not a

23

discovery rule case. The *Petrella* Court merely addressed the wide-spread adoption of the discovery rule in a footnote – not passing on it one way or another – and never once mentioned *Polar Bear*; *the* Ninth Circuit's discovery rule case. (emphasis added). As numerous post-*Petrella* courts within the Ninth Circuit have explained, *Petrella* "set forth the rolling approach to the statute of limitations in a non-discovery rule case," *i.e.*, in a separate accrual case, but *Petrella* "did not affect the Ninth Circuit's discovery rule," established by *Polar Bear*, which "operates as an exception to the general principle that damages are only recoverable for infringing acts within three years of filing suit." *Starz Ent., LLC v. MGM Domestic Television Distribution, LLC*, 510 F.Supp.3d 878, 884 (C.D. Cal. Jan. 5, 2021), *motion to certify appeal granted*, No. CV 20-4085-DMG (KSX), 2021 WL 945237 (C.D. Cal. Feb. 22, 2021)(appeal currently pending)[13]; *see Menzel v. Scholastic*, Inc., No. 17-CV-05499-EMC, 2019 WL 6896145, at *6-7 (N.D. Cal. Dec. 18, 2019)("*Petrella* did not clearly create a damages bar independent of a time bar. The discovery rule and the ability to recover damages consistent with that rule was not at issue." Thus, *Polar Bear* continues to be binding precedent on this Court, and, in *Polar Bear*, the Ninth Circuit made clear that a plaintiff can be awarded damages outside of the three-year period before the filing of his complaint."). Despite the district court's opinion in the

---

[13] Notably, despite MSI and Nealy's reliance on *Starz* in their objections to the report and recommendation, the district court never once acknowledged the case in its summary judgment order. (Doc. 248, at pp.10-15; Doc. 256, at pp.7-8).

underlying lawsuit, this Court should concur in the holdings of other post-*Petrella* courts and agree that *Petrella* is not "binding precedent" on this issue.

### C. *Sohm*'s Holding is Inherently Self-Contradictory, Undermines the Discovery Rule, and Has Been Widely Criticized.

In *Sohm*, the Second Circuit – the only federal circuit which has addressed the strict damages bar issue post-*Petrella* – held that "the discovery rule applies for statute of limitations purposes in determining when a claim accrues under the Copyright Act." *Sohm*, 959 F.3d at 50. However, in reversing the district court's ruling that damages outside the three-year window were recoverable, the court held that "in *Petrella,* the Supreme Court explicitly delimited damages to the three years prior to the commencement of a copyright action." *Id.* at 52. As explained above (and below), that is simply not the case, as *Petrella* dealt with the equitable doctrine of laches being asserted as a defense to shorten § 507(b)'s clear-cut three-year limitations period for a plaintiff who was fully aware of the defendant's infringement more than three-years from the date the suit was filed. *Petrella* was not a discovery rule case and certainly did not address what damages were recoverable when the discovery rule dictated the accrual of the plaintiff's copyright claims.

As Law Professor Tyler T. Ochoa of Santa Clara University of Law – "a recognized expert in US copyright law … [and] sole author of the annual updates to the West treatise *The Law of Copyright*, by the late Howard B. Abrams," among a plethora of other accolades – explained in his *Amicus Brief* In Support of Starz

Entertainment, LLC (*see Starz*, supra), *Sohm's* "dual holding is inherently self-contradictory." Brief for Professor Tyler T. Ochoa as Amici Curiae Supporting Appellee, Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC at *14 (No. 21-55379)(9th Cir.). Professor Ochoa went on to concisely explain his conclusion:

> Under *Petrella's* separate-accrual rule, any damages resulting from infringements that occurred within three years of filing can *already* be recovered under the three-year statute of limitations, even if the plaintiff had been long aware that the defendant was infringing. The discovery rule is *only* needed or useful to recover damages for infringements that occurred *more* than three years before suit was filed, in those cases in which a plaintiff was blamelessly ignorant that those infringements had occurred.
>
> By limiting damages to three years before the date the suit was filed, the court in effect was adopting an injury rule of accrual, even though it claimed that it was using the discovery rule of accrual. *Sohm* effectively eliminates the discovery rule while purporting to preserve it.

*Id.* (emphasis in the original). The district court in *Starz* agreed with Professor Ochoa's conclusion that adopting *Sohm's* interpretation of *Petrella* would "'eviscerate' the well-established discovery rule" because "[i]f plaintiffs cannot recover for infringements that occurred more than three years before the lawsuit was commenced, even if they were not aware of the infringements, then the discovery rule serves no practical purpose." *Starz*, at *6.

26

Pre- and post-*Sohm*, the Second Circuit's interpretation of *Petrella* has been rejected by district courts in the First, Third, Fourth, Fifth, Sixth, Seventh, and Ninth Circuits. *See e.g., Mitchell v. Capitol Recs., LLC*, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017)("the Court agrees with Mitchell that the discovery rule has not been abrogated by *Petrella* and that it remains the standard to be applied in copyright infringement cases in the Sixth Circuit."); *D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc.*, 516 F. Supp. 3d 121, 135 (D.N.H. 2021) ("After conducting another close reading of *Petrella* in light of *Sohm,* this court respectfully disagrees with the Second Circuit's interpretation."); *Richardson v. Kharbouch*, No. 19-C-02321, 2020 WL 1445629, at *6-7 (N.D. Ill. Mar. 25, 2020); *Krist v. Scholastic, Inc.*, 253 F. Supp. 3d 804, 811-12, 812 n.44 (E.D. Pa. 2017); *Topline Sols., Inc. v. Sandler Sys., Inc.*, No. ELH-09-3102, 2017 WL 1862445, at *21 (D. Md. May 8, 2017); *Alfa Laval Inc. v. Flowtrend, Inc.*, No. H-14-2597, 2016 WL 2625068, at *5-6 (S.D. Tex. May 9, 2016).

### D. Wide-Spread Adoption of *Sohm* Would Incentivize Infringement, Place an Unnecessary Burden on Artists, and Harm the Public.

In addition to Professor Ochoa, an amicus brief in support of Starz was also filed by The Authors Guild, Inc., the American Society of Media Photographers, Inc., The Dramatists Guild of America, the Graphic Artists Guild, the Romance Writers of America, the Songwriters Guild of America, Inc., and the Textbook & Academic Authors Association (collectively, the "Amicus Curiae") – who

collectively represent, "defend[] and promote[] the rights of authors …
photographers, graphic artists, songwriters, dramatists, scholarly authors, and other
artists." Brief for The Authors Guild, Inc., the American Society of Media
Photographers, Inc., The Dramatists Guild of America, the Graphic Artists Guild,
the Romance Writers of America, the Songwriters Guild of America, Inc., and the
Textbook & Academic Authors Association as Amici Curiae Supporting Appellee,
Starz Entertainment, LLC v. MGM Domestic Television Distribution, LLC at *1
(No. 21-55379)(9th Cir.).

Within the brief, the Amicus Curiae highlight one of the fundamental goals
"enshrined" by the Constitution – "encouraging artistic development." *Id.* at *24
(citing U.S. Const. art. I § 8 cl. 8 ("The Congress shall have the Power … [t]o
promote the Progress of Science and useful Arts, by securing for limited Times to
Authors and inventors the exclusive Right to their respective Writings and
Discoveries."). The Amicus Curiae also highlighted the importance of the discovery
rule for artists, especially in today's digital world:

> Policing [] infringements has unquestionably gotten harder.
> Infringing works are now distributed online at massive scale for
> virtually no cost by a sea of largely anonymous infringers
> operating around the world … [and] policing infringements will
> continue to become harder as digital content continues to
> proliferate and the quality of pirated works continues to improve.
>
> Moreover, one of the central challenges artists face in pursuing
> meritorious cases – engaging competent counsel – will only
> become more difficult if potential damages, and thus expected

recoveries, are slashed. Retrospective damages are what drive the decision and ability to litigate … [a]nd if artists are unable to justify their costs of litigation by the prospect of recovering damages, then they will have no choice but to cede the value of their creations to infringers.

The discovery rule is responsive to these concerns. It preserves an artist's rights – and the value of his or her case – by tying the date of "accrual" … to the reasonable discovery of the infringement, and, thereby, tying the artist's right to recovery to the date he or she reasonably discovered the infringement.

*Id.* at *11, 21-22. The Amicus Curiae conclude that "MGM's proposed rule," *i.e.*, the rule created in *Sohm*:

Does exactly the opposite of what copyright law broadly, and the discovery rule specifically, intend. By reducing potentially recoverable damages, it will *devalue* artists' rights 'to their respective Writing,' … *discourage* them from litigating meritorious suits … and … *reduce* the quantity and quality of new works that are made available for the public's benefit.

*Id.* at *26 (emphasis in the original). Not to mention, from a practical standpoint, the adoption of the *Sohm* holding would not only not discourage infringements, but would in actuality incentivize infringement by parties – such as the "anonymous infringers" referenced by the Amicus Curiae – with the capability of avoiding detection for a three-year period.

For all of the reasons outlined above, the "more harmonious solution" is the *Polar Bear*-Discovery Rule exception: "a three-year damages bar *except* when the plaintiff reasonably was not aware of the infringements at the time they occurred."

*Starz*, 510 F.Supp.3d. at 888. This Court should find that the district court erred in relying on *Sohm* and adopt this more harmonious solution.

## II. The District Court Usurped the Functions of the Jury, Disregarded Record Evidence, and Improperly Concluded That MSI and Nealy Did Not Present Evidence Sufficient to Defeat Summary Judgment on the Issue of Ownership of the MSP-Registered Songs. Application of a Proper Summary Judgement Standard to the Ample Evidence Present in the Record Mandates That the Issue Be Brought Before the Trier of Fact.

FRCP 56(a) provides that a court shall only grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact," and therefore, "the movant is entitled to judgment as a matter of law." FRCP 56(a). As the district court explained in the summary judgment order, "[w]hen the nonmoving party bears the burden of proof," summary judgment can be granted if the non-movant does not "come forward with *some evidence*" supporting its position. (Doc. 256, at p. 4)(quoting *Maxi-Taxi Of Fla., Inc. v. Lee Cty. Port Auth*., 301 F. App'x 881, 885 (11th Cir. 2008)(emphasis added). In determining summary judgment, the district court is not to usurp the functions of the jury by "making credibility determinations … weighing [] evidence, and … drawing [] legitimate inferences from the facts … the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (internal citations omitted).

The inquiry is simple: whether, based on the evidence present in the record, "a fair minded jury could find in the non-moving party's favor"; if the answer is yes, summary judgment cannot be granted. *Urbont v. Sony Music Ent*., 831 F.3d 80, 88 (2d Cir. 2016)(quoting *Beatie v. City of New York*, 123 F.3d 707, 710–11 (2d Cir. 1997)); *see Saregama India Ltd. v. Mosley,* 635 F.3d 1284, 1290 (11th Cir. 2011)(quoting *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.,* 402 F.3d 1092, 1120 (11th Cir.2005)("a summary judgment motion should not be granted unless the facts are so crystallized that nothing remains but questions of law."). It is reversible error for a district court to disregard record evidence and grant summary judgment. *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 849-50 (11th Cir. 2000)(reversing grant of summary judgment and holding that the "district court improperly discredited [the plaintiff's] testimony" regarding a material issue); *Strickland v. Water Works and Sewer Bd*., 239 F.3d 1199, 1202 (11th Cir. 2001)(holding that the plaintiff's claim "survives summary judgment because a 'swearing match' between the plaintiff and his immediate supervisor [concerning the ultimate issue of what happened] creates a material issue of fact").

The district court held that MSI could not "receive the benefit of the presumption of legal ownership based on the copyright registrations for the MSP-Registered Songs … [w]ithout *establishing* that MSP had no legal existence apart from MSI and was no more than an assumed name." (Doc. 256, at p.4)(emphasis

31

added). However, as explained above, an appropriate summary judgment assessment does not require MSI to conclusively "establish" such a relationship at this stage, but to present sufficient evidence to permit a reasonable jury to find in their favor on the issue. In short, the district court incorrectly applied the summary judgment standard, disregarded record evidence, and made a reversible error by concluding that MSI and Nealy had not done so.

### A. The Deposition Testimony of Nealy Coupled With That of Jonathan Black and Garfield Baker, Standing Alone, Creates a Genuine Issue of Material Fact.

In dereliction of its summary judgment role, the district court made a credibility determination as it related to Nealy's testimony, finding that the below discrepancy deemed it "contradictory." (Doc. 256, at p. 6).

Nealy testified as follows:

> Q.· Okay.· Is Music Specialist Publishing a corporation?
> A.· It's a -- a d/b/a.
> Q.· All right.· So it's a fictitious name.
> A.· Yes.
>
> Q. Okay.· Now, you -- we talked earlier
> about Music Specialist Publishing, and maybe you
> answered this question already.· Was Music
> Specialist Publishing a separately incorporated·
> legal entity, if you know what that means?
> A.· Yes.

(Doc. 248, at p.6-7). What the district court ignored, however, was that Nealy clarified his position immediately thereafter:

> Q.· It was.
> ·So Music Specialist Publishing is a different company from Music
> Specialist, Inc?
> A.· No. That was a d/b/for Music Specialist.

*Id.* It is not and cannot be disputed that MSP is not a separately incorporated legal
entity.

The district court also pointed to a prior affidavit of Nealy's in which he
referred to MSP as being "affiliated with Music Specialist Publishing." (Doc. 256,
at p.6). An affiliate, according to investopedia.com is "used primarily to describe a
relationship wherein one company owns less than a majority stake in … [a]nother
company's stock." James Chen, *Affiliate* (updated October 31, 2021),
https://www.investopedia.com/terms/a/affiliate.asp. While MSI was (and is) an
incorporated entity with the authority to issue 1,000 shares of stock at a $1.00 par
value – all of which were issued to Nealy as sole owner/shareholder of the entity –
MSP was never incorporated or organized, never issued shares of stock or had
authority to do so, and thus, could not legally be considered an affiliate of MSI.
(Doc. 167-1, at p. 5; Doc. 185, at p. 2, ¶ 2.). Nealy's prior testimony that MSI and
MSP were "affiliated" (a term with synonyms such as united, joined, and connected)
does not contradict his present and clear-cut testimony that MSP was a d/b/a of MSI.

The district court also found that Nealy's testimony was "uncorroborated" –
another incorrect assertion. (Doc. 256, at p.6). Both former MSI legal consultant
Jonathan Black and former MSI recording artist Garfield Baker confirmed that, to

their knowledge, MSP was a d/b/a of MSI. (Doc. 248, at p.7-9) (Black: "I believe that Music Specialist Publishing was a d/b/a of Music Specialist, Inc … I was directed to use that as the publishing entity for Music Specialist"); (Baker: "So maybe Music Specialist Publishing was some kind of d/b/a or whatever of Music Specialist, Inc., but I understood that to be the publishing arm of the Music Specialist Corp."). Even if somewhat "speculative," as the district court noted, the additional testimony is nonetheless corroborating. (Doc. 256, at p.6). The deposition testimony, which is only a small portion of the record evidence on the issue, should – standing alone – create a genuine issue of material fact regarding MSP being a d/b/a and the publishing arm of MSI.

By construing Nealy's testimony against him and disregarding the testimony of Jonathan Black and Garfield Baker, the district court ran afoul of its summary judgment functions of accepting the non-moving party's evidence as true, construing the evidence in the light most favorable to the non-moving party, and resolving all doubts in favor of the non-moving party. *Eastman Kodak Co. v. Image Technical Servs, Inc.*, 504 U.S. 451, 456 (1992). Accordingly, the district court's grant of summary judgment should be reversed.

34

**B. The Facts Stated Within the Copyright Certificates and the Copyright Office's Public Catalog are Documentary Evidence of the Relationship.**

In addition to the above testimony, a plethora of documentary evidence supporting MSI and Nealy's position is contained in the district court record. For example:

(a) As part of the underlying lawsuit, MSI and Nealy produced certificates of copyright registration for each of the MSP-Registered Songs. The certificates, which themselves constitute prima facie evidence of copyright validity, as well as the facts contained therein, *see* 17 U.S.C. § 410(c) provide as follows: (1) the MSI-Registered Songs – "Lookout Weekend" (PA 236-535)[14] and "The Party Has Begun" (PA 236-534) – were created in 1984 and registered on November 21, 1984, the copyright claimant was MSI (located at 67 N.W. 71st Street, Miami, FL 33150), and they were "work(s) made for hire" and transferred "by assignment" to MSI by the author, Butler; (2) "Jam the Box" (PA 310-389) and "I Know You Love Me" (PA 298-975) were created in 1984 and registered on July 30, 1986 and July 31, 1986, respectively, the copyright claimant was MSP (located at 67 N.W. 71st Street, Miami, FL 33150), and they were transferred "by written agreement – songwriters contract" to MSP by the author Butler; and (3) "Computer Language" (PA 228-955) was created in 1984

---

[14] "PA" stands for performing arts, and is the normal registration designation for musical compositions.

and registered on October 4, 1984, the copyright claimants were MSP and Happy Stepchild Music Publishing Corp., and they were transferred "as per songwriters agreement & co-publishing agreement" by the author, Butler. (Doc. 168-10, pp. 1-15).

On the face of the copyright certificates for "Jam the Box" and "I Know You Love Me" – two of the MSP-Registered Songs – correspondence pertaining to the musical compositions was to be sent to MSI corporate Secretary "Tara Washington [at] Music Specialists, Inc., 67 N.W. 71st Street, Miami, FL 33150." *Id.* at pp. 5-6, 11-12. Ms. Washington signed the registration "for" and as "the authorized agent of Music Specialist Publishing." *Id.* In short, the evidence shows that Musical Works were all created in the same year, that the copyrights were transferred by the same person – Butler – who was undisputedly the Vice President and a recording artist and producer working for MSI at the time, and that questions and communications pertaining to MSP's copyrights were directed to MSI, which was located at the exact same address, and, as a record label, would typically only own copyrights in sound recordings. *See* note 3.

(b) The Copyright Office website's public catalog printout pertaining to the musical compositions "Jam the Box" and "Computer Language" (the third MSP-Registered Song) lists the copyright claimant as "Music Specialist Publishing," with the "*Publisher Name*" being listed as "Music Specialists MSI-109" and "Music

Specialists MSI-106," respectively. (Doc. 167-16, at pp. 9, 18)(emphasis added). "MSI-109" and "MSI-106" are catalog numbers, which are "assigned to every release *by the record company* to identify that particular release." Lori Spencer, *What are the Catalog Numbers on Vinyl Records?* (updated April 12, 2017), https://ourpastimes.com/catalog-numbers-vinyl-records-8518643.html(emphasis added). The three-letter symbol "MSI," therefore, refers to the recording company MSI, and thus, according to the records of the Copyright Office, MSI is the publisher name for two of the MSP-Registered Songs. The exact same catalog numbers are displayed on the original vinyl records for "Jam the Box" and "Computer Language," which – although registered by MSP with the Copyright Office – both contain a copyright notice (©) directly next to "Music Specialists, Inc." (Doc. 176-19, at pp. 1, 4).[15]

### C. Tony Butler, the Former Vice President of MSI and the Sole Author of the Musical Works Acknowledged in Court Filings That MSI and MSP Were One in the Same Entity.

In 2006, Butler (and his solely owned and now-defunct entities Captain Productions, Inc. ("Captain") and C-Tan Music ("C-Tan") were sued by companies

---

[15] As an aside, regardless of whether "allegations in a party's statement of material facts [constitute] evidence, as the district court found, it is important to point out that Atlantic, Warner, and Artist stated in their statement of material facts that the license to use "Jam the Box" in the song "In the Ayer" was negotiated by "an attorney [claiming to] represent[] Butler, 321 Music and 'Music Specialist,' a d/b/a of MSI." (Doc. 256, at note 5).

named Pandisc and Whooping Crane. (Doc. 167-10). In response to the allegations in Pandisc and Whooping Crane's complaint, Butler (filing *pro se*) responded as follows:

(a) Pandisc and Whooping Crane alleged: "Plaintiffs, PANDISC and WHOOPING CRANE, and Defendant C-TAN MUSIC entered into an agreement whereby C-Tan sold twenty-five percent (25%) of the ownership of musical compositions/works referenced in the 1989 Production Agreement to Pandisc and Whooping Crane." *Id.* at ¶ 16. The musical compositions in the 1989 Production Agreement included "I Know You Love Me" (an MSP-Registered Song) and "Lookout Weekend" and "The Party Has Begun" (the MSI-Registered Songs). *Id.* at ¶¶ 13, 16. Butler responded: "Denied in that C-Tan Music had no interest in the subject compositions to transfer since *100% of the copyrights in the compositions were owned and controlled by Music Specialist, Inc*." (Doc. 185-12, at ¶ 16). (emphasis added).

(b) Pandisc and Whooping Crane alleged: "The 1990 Publishing Agreement assigns and transfers all exclusive rights to administer and exploit the copyrights in the musical compositions to Plaintiff PANDISC and WHOOPING CRANE." (Doc. 167-10, at ¶ 18). Butler responded: "Denied in that no rights could be transferred by C-Tan since *Music Specialist, Inc. was the sole owner of the rights in the subject*

*compositions* … and said rights were never transferred to C-Tan." (Doc. 185-12, at

¶ 18)(emphasis added).

In 2009, 321 (an entity created in 2007 and solely owned by Butler), Atlantic,

Warner, and Artist were sued by Pandisc and Whooping Crane. (Doc. 185-9). In 321

Music's countercomplaint, they alleged as follows:

> 321 is the owner of the … publishing rights for "Jam the
> Box" and the songs … described in ¶ 35 below (hereinafter
> "subject music") which it obtained from Tony Butler and
> *Music Specialist Publishing (Music Specialist)*, which has
> owned the music since its creation."

*Id*. at p. 9, ¶ 8. While the allegation states, "described in ¶ 35" only, it is clear – based

on the use of the plural "songs," the definition "subject music," and the format of

the document – that the songs being referenced are instead the ones provided in

paragraphs *9 through* 35. *Id.* at p. 9, ¶¶ 8-35 (emphasis added). The following songs

are contained in paragraphs 10, 13, 23, 24, and 32:

(a) "In 1984, Music Specialist (referring, as explained above, to MSP)

registered a claim of ownership of the copyright to "Jam the Box." See Exhibit "B"

attached hereto. (Copyright No. 000031089)."

(b) "In 1984, Music Specialist registered a claim of ownership of the

copyright to "I Know You Love Me." See Exhibit "A" hereto. (Copyright No.

0000298975)."

(c) "In 1984, Music Specialist registered a claim to ownership of the copyright to "computer language." See Exhibit "B" attached hereto. (Copyright No. 0000228955)."

(d) "In 1984, Music Specialist registered a claim of ownership of the copyright to [MSI-Registered Song] "The Party Has Begun." See Exhibit "B" attached hereto. (Copyright No. PA 0000236534)."

(e) "In 1984, Music Specialist registered a claim of ownership of the copyright to [MSI-Registered Song] "Lookout Weekend." (Copyright No. PA 0000236535)."

*Id.*. Except for the registration years for "Jam the Box" and "I Know You Love Me,"[16] the copyright numbers listed and the years of registration directly correspond to those that appear on the copyright certificates produced by MSI and Nealy in the underlying lawsuit: "Jam the Box"  (PA 310-[3]89); "I Know You Love Me" (PA 298-975); "Computer Language" (PA 228-955); "The Party Has Begun" (236-534); and "Lookout Weekend" (236-535). *Id.*; (Doc. 168-10, at pp. 1-15). Attached as Exhibit B to the countercomplaint by 321, was the full catalog of musical

---

[16] The reason for the improper year of registration listed for both "Jam the Box" and "I Know You Love Me" is that 321/Butler mistook the registration year for the year of creation. As evidenced by the copyright certificates for both musical compositions, they were created in 1984, but not registered until 1986 when Jonathan Black began setting up MSI's publishing catalog. (Doc. 168-10, at pp. 5, 11)

compositions and sound recordings registered by MSI and MSP, which showed that the MSI-Registered Songs were registered in the name of MSI and the MSP-Registered Songs were registered in the name of MSP. (Doc. 185-9, at pp. 22-24).

Thus, as explained in the Factual Background above, Butler admitted in the 2006 Case that 100% of his copyrights in the MSI-Registered Songs and "I Know You Love Me" (an MSP-Registered Song) had been transferred to and were owned by MSI. Then in the 2009 Case, 321 (*i.e.*, Butler) admitted that Butler's copyrights in the Musical Works (most importantly, as it relates to this appeal the MSI-Registered Songs) were owned by MSP "since [their] creation." By stating that the copyrights in "I Know You Love Me" (an MSP-Registered Song) were transferred to and owned by MSI and then that the MSI-Registered Songs (as well as "I Know You Love Me") had been owned by MSP since their creation, Butler – the former Vice President of MSI and the sole author of the Musical Works, and thus, the only person legally entitled to originally transfer the copyrights – confirmed that MSI and MSP were one in the same entity. In fact, Butler and 321's co-defendants in the 2009 Case – Atlantic, Artist, and Warner – agreed with Butler and 321's assertion that MSP owned the copyrights in the Musical Works (specifically, the MSI-Registered Songs) from their creation.[17] As such, at least implicitly, Atlantic, Artist, and Warner

---

[17] If not, they could not have asserted that Pandisc and Whooping Crane's ownership claims were "barred by virtue of a successive agreement covering the same musical works." *See* Factual Background, *supra*; (Doc. 185-13, at pp. 13, 29).

themselves acknowledged that MSI and MSP were one in the same entity – because if they were separate entities then it would only have been MSI who could have transferred the rights to the MSI-Registered Songs to Butler/321 and only MSP who could have transferred Butler/321 the rights to the MSP-Registered Songs.[18]

Applying the correct summary judgment standard, appropriately contemplating the above facts and evidence contained in the district court record, and considering the undeniable fact that Atlantic, Warner, and Artist have presented no evidence to directly refute MSI and Nealy's contention that MSP was d/b/a of MSI without separate legal existence, (Doc. 224, at p. 26)("As Defendants point out, Plaintiff have only 'vaguely pled' that MSP is affiliated with MSI"), holding that a reasonable jury could not possibly find that MSI is the owner of the MSP-Registered Songs, and thus, has standing to maintain a copyright infringement as to those songs – as the district court did – is indeed reversible error.

## <u>CONCLUSION</u>

This Court should reverse the district court's holdings that (1) MSI and Nealy's potential damages are limited to the three-year period prior to their filing suit and (2)

---

[18] Any argument whatsoever that Atlantic, Warner, and Artist – three of the largest and most prominent music entities in the world – did not perform at least minimal due diligence, *i.e.,* checking the Copyright Office website or records, before entering into their agreements with Butler and 321 (and therefore did not know that the musical compositions "Lookout Weekend" and "The Party Has Begun" had been registered in the name of MSI) is, again, preposterous.

MSI and Nealy did not present sufficient evidence of their ownership of the MSP-Registered Songs to defeat summary judgment.

## **CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY that this Brief complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B).  This Brief is comprised of 10,187 words, from the Statement of the Issues Section to and including the Conclusion.

## <u>CERTIFICATE OF SERVICE</u>

I, Carlton LP Talbot, do hereby certify that a copy of the foregoing Appellant's Opening Brief was sent to all counsel for Defendants/Appellees listed below by electronically mailing the same on January 25, 2022.

Karen L. Stetson and Jonathan L. Gaines
GRAY ROBINSON, P.A.
Fla. Bar No. 742937
333 SE 2nd Avenue, Suite 3200
Miami, FL 33131
(305) 416-6880
karen.stetson@gray-robinson.com
Jonathan.gaines@gray-robinson.com

Jonathan Z. King
COWAN, LIEBOWITZ & LATMAN, P.C.
147 West 47th Street
New York, NY 10036
(212) 790-9238
jzk@cll.com

Respectfully submitted,

By: /s/ Carlton Talbot
Carlton LP Talbot, Esq.
Talbot Legal Consultants
Fla Bar ID: 0107089
2719 Hollywood Blvd., Suite 5067
Hollywood, FL 33020
(305) 697-3030
carlton@talbotlegalco.com

*Attorney for Plaintiffs/Appellants*
*Music Specialist, Inc. and Sherman*
*Nealy*